**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
MARK PETRONIO,

                        Petitioner,
                                               **Memorandum of**
                                               **Decision and Order**
              -against-
                                               09-CV-341 (ADS)


JAMES WALSH, Superintendent


                        Respondent,
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


**APPEARANCES**


**JONATHAN I. EDELSTEIN, ESQ.**
Attorney for the Petitioner
271 Madison Avenue, 20th Floor
New York, N.Y. 10016

**KATHLEEN RICE, NASSAU COUNTY DISTRICT ATTORNEY**
Attorney for the Respondent
262 Old Country Road, Mineola, N.Y. 11501
        By: Tammy J. Smiley, Assistant District Attorney
           Margaret E. Mainusch, Assistant District Attorney

**SPATT, District Judge.**

Mark Petronio ("Petronio" or "the Petitioner") petitions this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, raising various challenges to his state court conviction for murder in the second degree, N.Y. Penal Law § 125.25(2) ("depraved indifference murder"). The Court finds that, in light of the New York Court of Appeals' reinterpretation of Section 125.25(2) in the years following Petronio's conviction, the evidence offered at his trial was legally insufficient to convict him of depraved indifference murder. His petition is therefore granted and the case is remanded to the state courts for proceedings consistent with this opinion.

## I. BACKGROUND

On April 24, 2002, Petronio was convicted, after a jury trial in Nassau County Court of murder in the second degree, N.Y. Penal Law § 125.25(2), insurance fraud in the third degree, N.Y. Penal Law § 176.20, and tampering with physical evidence, N.Y. Penal Law § 215.40(2). The charges stemmed from the fatal beating of Jeffrey Walter ("Walter" or "the Decedent") on November 3, 2000.

### A. The Fatal Beating of Jeffrey Walter

The following facts are adduced from the instant petition and the underlying record. On November 3, 2000, Jeffrey Walter and his friend, Thomas Giglio ("Giglio"), drove to Mark Petronio's home in Valley Stream, New York, for the purpose of selling the Petitioner a substantial quantity of ecstasy pills. Walter had Giglio drop him off at a local bowling alley, where Petronio agreed to meet him. (Tr. 1401-02.) They returned together to Petronio's house to consummate the deal. (Tr. 1402.)

Once in Petronio's basement, Walter offered him the ecstasy, and Petronio observed that there were far fewer tablets than had been agreed upon. (Tr. 1402-05.) Having been cheated by Walter in the past, Petronio accused him of trying to "rip him off," (Tr. 1405,) and according to Petronio's testimony, Walter then punched him in the head. (Tr. 1406.) In the ensuing struggle, Petronio fell onto a bed and the Decedent landed on top of him. (Tr. 1409.) As the two men wrestled, Petronio was able to free his right arm and retrieve a can of pepper spray from his pocket. (Tr. 1410.)

Petronio then sprayed the Decedent in the face with the pepper spray, causing him to scream in pain. (Tr. 1410.) Because the men were face-to-face, Petronio also managed to get pepper spray in his own eyes. (Tr. 1411.) Petronio testified that because the Decedent was clinging to his leg, he believed that the Decedent still posed a threat, (Tr. 1411-12,) and that he sought to prevent Walter from reaching his bag, for fear that it contained a gun. (Tr. 1411.) He then slammed the Decedent's head against the floor three times and kicked him in the head twice, whereupon the Decedent stopped moving. (Tr. 1411-12.)

Petronio testified that he went to the restroom to wash the pepper spray out of his eyes, and discovered upon returning that the Decedent was not breathing. (Tr. 1413.) He wrapped the Decedent's head in duct tape to stop him from bleeding on the floor and because he did not want to look at the Decedent's face. (Tr. 1415.) He placed the body in a laundry bag and drove in his Jeep to his father's house in Newburgh, New York, to dispose of the remains. (Tr. 1415-20.)

Once there, Petronio's father told him that he would not help him dispose of the body. (Tr. 1421.) Petronio then drove to John F. Kennedy International Airport ("JFK") and left the Jeep in long-term parking. On the night of the incident, Petronio stayed with his then-girlfriend, Christine Riccio ("Riccio"). She testified at the trial that she noticed no injuries on the

defendant's body besides a one-inch cut on the back of his hand and a lump on the back of his head. (Tr. 617.)

The following day, Petronio had a friend drive him back to JFK to retrieve the Jeep. (Tr. 1423.) He and the friend then drove the Decedent's body to a home Petronio owned in Patchogue, New York. (Tr. 1424.) Petronio eventually enlisted the help of two laborers to bury the body in the backyard of the Patchogue home. (Tr. 1428-29.) Together, they covered the body with soil and lime. Two weeks later, Petronio installed a concrete patio over the burial site. (Tr. 1430.)

On December 16, 2000, Petronio moved into Riccio's apartment in Astoria, Queens. She testified that a few days later, Petronio returned home late, very upset, and confessed to her that he had killed a man during a fight. (Tr. 619-20.) He said that he did not call the police because there was a large quantity of drugs involved. (Id.)

Two months later, Riccio had moved in with a new boyfriend, Mark Morella ("Morella"). Morella testified that near the end of February 2001, Petronio called him and demanded that he kick Riccio out of his home. (Tr. 657.) When Morella declined, Petronio threatened to kill him, saying, "[y]ou don't know what I'm capable of, ask Christine." (Id.)

**B. Petronio's Arrest and Subsequent Confessions**

Petronio was arrested on March 8, 2001 and transported to Nassau County Police Department Headquarters, where he was interrogated. (Tr. 724.) While in custody, he made a series of evolving statements describing the events of November 3, 2000, the last of which was similar to his testimony at trial in all material respects except one. (Tr. 733-72.) In his final

statement to the police, Petronio recalled throwing the Decedent, face-first, into the ground several times and jumping on the Decedent's back and neck with both feet. (Tr. 767-68.)

The medical examiner, Dr. Gerard Catanese ("Catanese"), testified at trial that the Decedent suffered numerous fractures of the bones in his face and neck, and that the vertebrae in his neck had been fully separated during the fight. (Tr. 1103-04.) He also found hemorrhaging in and around the Decedent's neck, indicating that he was alive at the time his neck was broken. (Tr. 1103.) He testified that these injuries were consistent with a tremendous force being applied to the head and neck several times while the victim was lying face down on a hard surface, (Tr. 1105-06,) and that the fractured vertebrae would have likely caused instant death. (Tr. 1108.)

## C. Trial Motions and Objections

During the prosecutor's cross examination of Petronio, he offered a series of answers that were either vague, evasive, or outside the scope of the questions. The trial judge instructed Petronio to answer the questions:

| | |
|---|---|
| The Court: | I have told you a dozen times, answer the questions. Okay. |
| Defendant: | Okay. Sorry. |
| The Court: | I don't want any communication. |
| Mr. Kase: | Judge, may I have a moment? |
| The Court : | Do you understand what I'm saying, both of you? |
| Mr. Kase: | Judge – |
| The Court: | I'm trying to get a point across to your client. He's looking at you. I don't want that happening. I want you to concentrate on what I'm saying . . . |

(Tr. 1591.) At recess, defense counsel moved for a mistrial on the grounds that the Court had "indicated" that counsel was improperly coaching Petronio and that the accusation improperly

prejudiced the jury. The Judge denied the motion, but offered curative instructions to the jury to which defense counsel did not object.

At the end of the People's case, Petronio moved to dismiss the depraved indifference murder charge on the grounds that the prosecution had not made out a prima facie case. (Tr. 1162.) The Judge denied the motion summarily, ruling that he believed that "there is . . . a reasonable interpretation of the evidence that would establish the essential elements." (Tr. 1163.)

After summation but before the jury charge, Petronio objected to the admission of testimony regarding his threatening phone call to Morella, on the grounds that it was prejudicial. The Judge overruled the objection. (Tr. 1790-91.) At the same time, Petronio moved to have the Judge instruct the jury to consider a justification defense under N.Y. Penal Law § 35.20, relating to the right to use deadly force to terminate a burglary. The Judge denied the motion, holding that there was no evidence in the record to suggest that Petronio had killed the Decedent with the intent to thwart a burglary. (Tr. 1794-1800.)

**D. The Jury Charge**

The trial Judge charged the jury to consider the count of second-degree murder under N.Y. Penal Law § 125.25(1) ("intentional murder"), and, in the alternative, depraved indifference murder under Penal Law § 125.25(2). The Court instructed the jury that Petronio should be found guilty of depraved indifference murder if he "recklessly engaged in conduct which created a grave risk of death to another person and thereby caused the death of [the Decedent]." (Tr. 1828.) The Judge also charged the alternative, lesser count of second-degree manslaughter.

The Court then instructed the jury that if it found Petronio guilty of any of the aforementioned offenses, it should consider whether he was entitled to a defense under the New

York justification statute, N.Y. Penal Law § 35.15(2)(a). The Court also charged the remaining counts in the indictment: third-degree insurance fraud, N.Y. Penal Law § 176.20, and tampering with physical evidence, N.Y. Penal Law § 215.40(2).

## E.  Verdict and Sentencing

On April 24, 2002, the jury acquitted Petronio of intentional murder, but found him guilty of depraved indifference murder.  The jury also convicted Petronio of the lesser counts of insurance fraud in the second degree and tampering with physical evidence.

After the verdict but prior to sentencing, Petronio brought to the trial Court's attention a decision in which the late United States District Judge Charles Brieant ruled that New York's depraved indifference murder statute had been unconstitutionally applied.  See Jones v. Keane, No. 02-CV-1804, 2002 WL 33985141 (S.D.N.Y. 2002), vacated, Jones v. Keane, 329 F.3d 290 (2d Cir. 2003).  In essence, Judge Brieant found that the New York Court of Appeals had "conflated" depraved indifference murder with manslaughter in the second degree, creating an unconstitutional degree of vagueness.  Jones, 2002 WL 33985141, at *5.  To remedy this problem, Judge Brieant stated that a writ would issue unless the People agreed that the petitioner should be resentenced for manslaughter.  Id. at *6.  In light of Jones, Petronio's counsel requested that he be resentenced on a manslaughter conviction rather than depraved indifference murder.  However, the trial Court denied Petronio's application, noting that the then-recent decision in People v. Sanchez, 98 N.Y.2d 373, 748 N.Y.S.2d 312 (2002) reflected that the New York Court of Appeals did not share Judge Brieant's view of the statute.

On July 24, 2002, the Petitioner was sentenced to twenty-five years to life imprisonment, with shorter sentences for the lesser offenses to run concurrently.  In addition, he was ordered to

pay restitution to an insurance company for filing a false claim in connection with the Jeep he used to transport Walter's body. He was also ordered to pay restitution to Walter's family.

**F. Appellate History**

Petronio filed a timely appeal with the Appellate Division, Second Department, arguing that: (1) the evidence was legally insufficient to convict him of depraved indifference murder and that the conviction was against the weight of the evidence; (2) the contemporary interpretation of the depraved indifference murder statute was unconstitutionally vague; (3) the Court erred in admitting testimony concerning the Petitioner's threats to Morella; (4) the Court's comments addressing his supposed coaching during cross-examination unreasonably prejudiced the jury; (5) the Court erred in failing to admit evidence of a murder committed by the Decedent; (6) the trial Court should have instructed the jury to consider a justification defense under Penal Law § 35.20, relating to acts intended to thwart a burglary; and (7) his final written confession was per se involuntary, as his Miranda waiver had expired due to the length and discontinuity of his interrogation. People v. Petronio, 34 A.D.3d 602, 603-05, 825 N.Y.S.2d 99 (2d Dep't 2006).

The Appellate Division held that the first two of these arguments, the legal insufficiency claim and the constitutional vagueness claim, were both unpreserved for appellate review under New York's contemporaneous objection rule. Id. at 603 (citing N.Y. Crim. Proc. Law § 470.05). The Court also held that, "in any event," these claims would fail on the merits, and that the verdict was not against the weight of the evidence. Id.

The Court also held that Petronio's improper comments claim, justification charge claim and Miranda warning claim all failed on the merits and that the remainder of his contentions were "either unpreserved for appellate review, or, in any event, . . . without merit." Id. at 605.

Petronio filed a timely application for leave to appeal to the New York Court of Appeals. However, leave to appeal was denied on April 18, 2007.

Following the denial of leave to appeal, Petronio moved to vacate his conviction pursuant to N.Y. Crim. Proc. Law § 440.10, claiming that he had not received effective assistance of counsel at trial. He argued that because his defense attorney failed to object with adequate specificity to preserve his legal insufficiency claim, or early enough to preserve his constitutional vagueness claim, he did not receive an adequate standard of legal assistance. His trial counsel was, by then, a County Court judge in Nassau County, so the motion was transferred to the Honorable James C. Hudson, a County Court judge in Suffolk County. On April 22, 2008, Judge Hudson denied the motion on the grounds that sufficient facts appeared in the trial record such that, under § 440.10(2)(c), the ineffective assistance of counsel claim should have been brought on direct appeal. The County Court also held, in the alternative, that Petronio's substantive claims were without merit and that counsel was effective.

## G. Petronio's Habeas Petition

On January 26, 2009, Petronio filed the instant petition, arguing that: (1) the evidence was legally insufficient to convict him of depraved indifference murder; (2) the depraved indifference statute was unconstitutionally vague as applied; (3) the admission of the testimony regarding his threats to Morella deprived him of due process; (4) he suffered constitutional error resulting from the trial Court's alleged suggestion that he was being coached by defense counsel; (5) the failure to charge the jury to consider a justification defense under N.Y. Penal Law § 35.20(3), denied him of due process; and (6) he received ineffective assistance of counsel.

## II.  DISCUSSION

### A.  Standard of Review

The Antiterrorism and Effective Death Penalty Act provides that a federal court may grant habeas corpus relief with respect to any claim that was adjudicated on the merits if the adjudication of that claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law, as expressed by the Supreme Court, if "the state court arrives at a conclusion opposite to that reached by [the] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  Williams v. Taylor, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000).  " '[C]learly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."  Georgison v. Donelli, 588 F.3d 145, 154 (2d Cir. 2009) (quoting Lockyer v. Andrade, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003)).

### B.  New York's Depraved Indifference Murder Statute

The Petitioner's argument that he was convicted of depraved indifference murder based on legally insufficient evidence arises as a result of the fundamental shift in the interpretation of New York's murder statute that occurred in the years following his conviction.  To address

Petronio's legal argument, it is necessary to begin with a discussion of the depraved indifference murder statute's doctrinal development.

New York's depraved indifference murder statute provides that a defendant is guilty of second degree murder if, "under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person." N.Y. Penal Law § 125.25(2). "A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists." N.Y. Penal Law § 15.05(3). New York law requires that "[t]he risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation." Id.

At the time of Petronio's trial in April of 2002, Section 125.25(2) was construed according to the New York Court of Appeals' decision in People v. Register, 60 N.Y.2d 270, 276-78, 469 N.Y.S.2d 599 (1983). In Register, the Court of Appeals announced that "recklessness" was the required mental state for depraved indifference murder. 60 N.Y.2d at 274. "Depravity and indifference were assessed by the jury, based on its review of the circumstances of the crime." Mannix v. Phillips, No. 07-0664, 2010 WL 3387898, at *9 (2d Cir. Aug. 30, 2010) (citing Register, 60 N.Y.2d at 274-75). As the New York Court of Appeals would later explain in Sanchez, 98 N.Y.2d 373, the focus of the inquiry under the Register analysis was not on the " 'subjective intent of the defendant, as it is with intentional murder, . . . but rather upon an objective assessment of the degree of risk presented by defendant's reckless conduct.' " Sanchez, 98 N.Y.2d at 392 (quoting Register, 60 N.Y.2d at 277). Under the Register

formulation, the New York Court of Appeals reasoned that "depraved indifference murder 'is distinguishable from manslaughter . . . by the objective circumstances in which the act occurs.'" Register, 60 N.Y.2d at 278.

The Register approach was applied consistently for nearly a decade and reaffirmed by the New York Court of Appeals in Sanchez, a four to three decision that included three dissenting opinions. 98 N.Y.2d. 373. However, finding that the pall of the depraved indifference murder statute fell too broadly, the Court of Appeals began overturning convictions of defendants whose conduct was manifestly intentional. People v. Payne, 3 N.Y.3d 266, 786 N.Y.S.2d 116 (2004); see, e.g. People v. Gonzalez, 1 N.Y.3d 464, 775 N.Y.S.2d 224 (2004) (reversing a depraved indifference murder conviction for a defendant who shot the decedent in a barber shop nine times, continuing to fire even after the man had fallen to the ground ); People v. Hafeez, 100 N.Y.2d 253, 762 N.Y.S.2d 572 (2003) (overturning a depraved indifference murder conviction for a defendant who conspired to ambush the decedent outside of a bar and stabbed him fatally in the chest).

A line of cases decided before Petronio's conviction became final signaled a true shift in the interpretation of the depraved indifference murder statute. See People v. Feingold, 7 N.Y.3d 288, 295, 819 N.Y.S.2d 691 (2006); People v. Suarez, 6 N.Y.3d 202, 210, 811 N.Y.S.2d 267 (2005); Payne, 3 N.Y.3d at 271. In Feingold, the Court of Appeals explicitly overruled Register and Sanchez, and formally announced that the *mens rea* requirement for depraved indifference murder is "depraved indifference," not "recklessness." 7 N.Y.3d at 295-6.

Under these cases, "indifference" is now best understood as a dispassion towards the fate of the victim -- "a willingness to act not because one intends harm, but because one simply doesn't care whether grievous harm results or not." Suarez, 6 N.Y.3d at 214. This interpretation

prevents depraved indifference murder convictions in cases where the defendant *intended* a particular individual's death, on the sound theory that such acts hardly evince an "indifference" towards that person's life. See Payne, 3 N.Y.3d at 270 (explaining that "[i]ndifference to the victim's life . . . contrasts with the intent to take it").

Significantly, in Payne and Suarez, the New York Court of Appeals further held that the requisite level of "indifference" could not typically be exhibited in one-on-one, intentional assaults that result in the victim's death. See Suarez, 6 N.Y.3d at 212 (observing that "[a] defendant may be convicted of depraved indifference murder when but a single person is endangered in only a few rare circumstances"); Payne, 3 N.Y.3d at 272. In fact, New York courts now recognize only a limited number of situations in which they will accept depraved indifference murder convictions for one-on-one killings, and these situations are generally limited to two categories. Suarez, 6 N.Y.3d at 212-13.

The first category includes cases where the defendant causes a vulnerable victim's death by placing him or her, without an intent to kill, in a particularly dangerous situation. Suarez, 6 N.Y.3d at 212. The seminal example of this class of cases is People v. Kibbe, in which the defendants robbed the decedent and left him on the side of the road in winter without adequate clothing. 35 N.Y.2d 407, 410, 362 N.Y.S.2d 848 (1974); see also People v. Mills, 1 N.Y.3d 269, 772 N.Y.S.2d 228 (2003) (defendant pushed a young boy into the water, saw that he hit his head on the pier, and abandoned the victim to drown).

The second category applies to a very limited number of cases that would normally be covered by a manslaughter charge. To fall into this class, the defendant must, with an intent to seriously injure, cause the death of another, and the conduct must be so heinous as to merit punishment in excess of that provided by the manslaughter statute. Suarez, 6 N.Y.3d at 212-13.

"The defendant's conduct must be 'so wanton, so deficient in a moral sense of concern, so devoid of regard of the life or lives of others, and so blameworthy as to warrant the same criminal liability as that which the law imposes upon a person who intentionally causes the death of another.'" Id. at 211 (quoting People v. Russell, 91 N.Y.2d 280, 287-88, 670 N.Y.S.2d 166 (1998); People v. Fenner, 61 N.Y.2d 971, 973, 475 N.Y.S.2d 276 (1984)).  In this limited class of cases, Courts have upheld depraved indifference murder convictions "when a defendant-- acting with a conscious objective not to kill but to harm--engages in torture or a brutal, prolonged and ultimately fatal course of conduct against a particularly vulnerable victim." Suarez, 6 N.Y.3d at 212.

For instance, in People v. Poplis, the defendant beat a three-and-a-half year old child over the course of five days, thereby causing his death.  30 N.Y.2d 85, 87, 330 N.Y.S.2d 365 (1972). In People v. Best, the defendant beat her nine and a half year old son so frequently and severely that his open wounds became infected, eventually causing sepsis and death.  85 N.Y.2d 826, 624 N.Y.S.2d 363 (1995).  Courts have also upheld depraved indifference murder convictions in "extraordinary" cases where the recklessness was so extreme that a murder prosecution was warranted.  See People v. Roe, 74 N.Y.2d 20, 544 N.Y.S.2d 297 (1989) (upholding a depraved indifference conviction where the defendant killed an unwitting victim during a "game" of "Polish Roulette.").  Where facts comparable to these two lines of cases are not present, "a jury is foreclosed, as a matter of law, from considering a depraved indifference murder charge whenever death is the result of a one-on-one confrontation."  Suarez, 6 N.Y.3d at 213.

Having traced the development of Section 125.25(2), the Court will now review Petronio's claim that the evidence adduced at his trial was legally insufficient to convict him of depraved indifference murder.

## C. The Petitioner's Legal Insufficiency Claim

Courts have held that defendants may benefit from changes in the law that occur before their convictions become final.  See Fernandez v. Smith, 558 F. Supp. 2d 480, 498-502 (S.D.N.Y. 2008).  In New York, a petitioner's case becomes final ninety days after the Court of Appeals denies his application for leave to appeal, which is when a litigant's option to petition the United States Supreme Court for a writ of certiorari expires.  Fernandez v. Artuz, 402 F.3d 111, 112 (2d Cir. 2005).

According to this formula, the Petitioner's case became final on July 17, 2007, more than a year after the Court of Appeals' decision in Feingold.  This means that Petronio's petition should be reviewed under the depraved indifference murder statute as interpreted in Payne, Suarez and Feingold.  The Petitioner argues that under this interpretation, the evidence presented at trial was legally insufficient to convict him of depraved indifference murder.  The Respondent counters, as a threshold matter, that Petronio's legal insufficiency argument is procedurally barred.  Before the Court can reach the merits of the Petitioner's legal insufficiency claim, it must determine whether this claim is even reviewable.

### 1. Independent and Adequate State Grounds

A defendant whose claim is rejected in state court for failure to comply with a state procedural rule may be precluded from raising that claim on habeas review in federal court.  See Coleman v. Thompson, 501 U.S. 722, 729-30, 111 S. Ct. 2546, 115 L.Ed.2d 640 (1991); Garcia v. Lewis, 188 F.3d 71, 79 (2d Cir. 1999).  Under the procedural default rules, "even when a petitioner presents a colorable federal constitutional claim, federal habeas review is barred if the claim was denied by a state court on a state procedural ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision.' "  Fernandez, 558 F.

Supp. 2d at 489 (quoting <u>Harris v. Reed</u>, 489 U.S. 255, 260, 109 S. Ct. 1038, 103 L.Ed.2d 308 (1989)).

A state procedural rule will be viewed as "independent" of a federal question if it was actually relied upon as the "independent basis" for the state court's dismissal.  <u>See</u> <u>Fernandez</u>, 558 F. Supp. 2d at 489 (quoting <u>Fama v. Comm'r of Corr. Servs.</u>, 235 F.3d 804, 809 (2d Cir. 2000)).  A state procedural bar is "adequate" if it "is firmly established and regularly followed by the state in question" in the specific circumstances presented in a case.  <u>Monroe v. Kuhlman</u>, 433 F.3d 236, 241 (2d Cir. 2006) (citation omitted).  In other words, "State courts may not avoid deciding federal issues by invoking procedural rules that they do not apply evenhandedly to all similar claims."  <u>Garcia</u>, 188 F.3d at 77 (quoting <u>Hathorn v. Lovorn</u>, 457 U.S. 255, 263, 102 S. Ct. 2421, 72 L.Ed.2d 824 (1982)).  However, "the principles of comity that drive the doctrine counsel that a federal court that deems a state procedural rule inadequate should not reach that conclusion 'lightly or without clear support in state law.' "  <u>Id.</u> (quoting <u>Meadows v. Holland</u>, 831 F.2d 493, 497 (4th Cir. 1987) (en banc), <u>vacated on other grounds</u>, 489 U.S. 1049, 109 S. Ct. 1306, 103 L. Ed. 2d 575 (1989).

In determining whether the state procedural rule is "adequate", courts examine the "basis for and application of state law."  <u>Garcia</u>, 188 F.3d at 77 (citations omitted).  Ultimately, courts in the Second Circuit "deem a state court's finding of procedural default 'adequate' if there is a 'fair and substantial' basis in state law for the state court's determination."  <u>Id.</u> at 78.

Here, the Second Department held that the Petitioner's legal sufficiency claim was "unpreserved for appellate review and, in any event, without merit".  <u>Petronio</u>, 34 A.D.3d at 603 (citing N.Y. Crim. Proc. Law § 470.05(2)).  Since alternative holdings rendered, "in any event," have been ruled not to diminish the actual, "independent" reliance upon the procedural ground,

this Court must consider whether New York's procedural default rule, § 470.05, was "adequate" to support the finding that Petronio defaulted. Fernandez, 558 F.3d at 504 (citing Zarvela v. Artuz, 364 F.3d 415, 417 (2d Cir. 2004)).

The Supreme Court and the Second Circuit have held that "failure to object at trial when required by New York's contemporaneous objection rule . . . is an adequate and independent state ground" to preclude habeas review. Rivera v. Ercole, No. 07 Civ. 3577, 2007 WL 2706274, at *14 (S.D.N.Y. Sep. 18, 2007) (citing Wainwright v. Sykes, 433 U.S. 72, 86, 90, 97 S. Ct. 2497 (1977)); Murray v. Carrier, 477 U.S. 478, 485-92, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986); Franco v. Walsh, 73 Fed. Appx. 517, 518 (2d Cir. 2003); Garcia, 188 F.3d at 82). Under New York's contemporaneous objection statute, an objection will be sufficient to generate an appealable issue of law only "if the party made his position with respect to the ruling or instruction known to the court," or "if in response to a protest by a party, the court expressly decided the question raised on appeal." N.Y. Crim. Proc. Law § 470.05(2).

It is well-established that a "general motion" is insufficient to establish an appealable issue of law. Instead, for an objection to generate a reviewable issue, it must be "specifically directed" at the alleged deficiency in the evidence. People v. Hawkins, 11 N.Y.3d 484, 492, 872 N.Y.S.2d 395 (2008) (quoting People v. Gray, 86 N.Y.2d 10, 19, 629 N.Y.S.2d 173 (1995) (explaining that "even where a motion to dismiss for insufficient evidence was made, the preservation requirement compels that the argument be 'specifically directed' at the alleged error"). This requirement is designed to improve the truth-seeking function of trial courts and promote the finality of their judgments. As such, objections must be delivered with enough specificity to provide the trial judge with an opportunity to evaluate their legal merits. Gray, 86 N.Y.2d at 20 ("The chief purpose of demanding notice through objection or motion in a trial

court, as with any specific objection, is to bring the claim to the trial court's attention. A general motion fails at this task.").

In this case, the Petitioner moved to dismiss "based on the fact that the People have failed to establish a prima facie case." (Tr. 1162.) The trial judge denied the motion, noting that "there is . . . a reasonable interpretation of the evidence that would establish the essential elements." (Tr. 1163.). Under New York state law, this objection was inadequate to preserve the Petitioner's legal sufficiency claim.

In Hawkins, a similar case, the defendant objected not only that the People had failed to make out a prima facie face, but that the People had failed to proffer sufficient evidence to show that his conduct was adequately depraved to support a conviction under Section 125.25(2). 11 N.Y.3d at 493. Nevertheless, the Court of Appeals held that the claim was unpreserved because the objection was inadequately directed at the alleged deficiency. Id. The Court reasoned that defense counsel could have directed the objection at the *mens rea* element or at "the circumstances evincing a depraved indifference". Id.; N.Y. Penal Law § 125.25(2).

The objection in this case, which was even less specific than the one in Hawkins, was insufficient to create a reviewable issue of law in New York. However, this finding does not end the Court's inquiry as federal courts "are empowered under 28 U.S.C. § 2254 to look beyond a state procedural forfeiture and entertain a state prisoner's contention that his constitutional rights have been violated." Reed v. Ross, 468 U.S. 1, 9, 104 S. Ct. 2901, 82 L.Ed.2d 1 (1984). Even if a claim is procedurally barred under state rules, a federal court may still review the claim on the merits if the petitioner can demonstrate both cause for the default and resulting prejudice, or if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice. Coleman, 501 U.S. at 749-50 (citations omitted).

### 2. Whether There Was Cause for the Procedural Default

To establish "cause," a petitioner must " 'show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.' " <u>Fernandez</u>, 558 F.Supp.3d at 490 (quoting <u>Carrier</u>, 477 U.S. at 479). To show "prejudice," the procedural default must also result in "actual" injury and cause a " 'substantial disadvantage, infecting the entire trial with error of constitutional dimensions.' " <u>Carrier</u>, 477 U.S. at 494 (quoting <u>United States v. Frady</u>, 456 U.S. 152, 170, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982)).

In this case, the Petitioner argues that his failure to make an adequately specific motion challenging the sufficiency of the evidence was "caused" by (1) the ineffective assistance of his trial counsel; and (2) the fact that the argument was not available until cases decided after the trial offered a new interpretation of Section 125.25(2). The Court will address each of these issues in turn.

### a. Ineffective Assistance of Counsel

A petitioner can establish "cause" to excuse a procedural default by showing that counsel was ineffective in "failing properly to preserve the claim for review in state court." <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451, 120 S. Ct. 1587, 146 L.Ed.2d 518 (2000) (citing <u>Carrier</u>, 447 U.S. at 488-89). In this context, "[n]ot just any deficiency will do" as the petitioner must show that counsel was "so ineffective as to violate the Federal Constitution." <u>Id.</u> However, an ineffective assistance of counsel claim must itself "be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." <u>Carrier</u>, 477 U.S. at 489. In this case, the Respondent contends that Petronio's ineffective assistance of counsel claim was not properly presented in the state court and that therefore he is unable to establish cause for the procedural default of his legal insufficiency claim.

Following the denial of his direct appeals, the Petitioner filed a motion in the Suffolk County Court under N.Y. Crim. Proc. Law § 440.10 to vacate his conviction on the grounds that he had received ineffective assistance of counsel. Judge Hudson denied the motion at least in part on the ground that this claim should have been raised on direct appeal under § 440.10(2)(c). Section 440.10(2)(c) provides that:

> the court must deny a motion to vacate a judgment when . . . [a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him.

Id. This provision effectively prevents defendants from using § 440.10 motions as alternatives to direct appeal. The logic is that if a particular claim can be heard by the appellate courts, it should be brought there in the first instance. Conversely, if adjudicating such a claim would involve a detailed consideration of facts that are either new or external to the original proceeding, bringing the claim for the first time in a 440.10 motion is appropriate. Murden v. Artuz, 497 F.3d 178, 196 (2d Cir. 2007) (citing Sweet v. Bennett, 353 F.3d 135, 140 (2d Cir. 2003)).

As noted above, a federal court reviewing a habeas petition "will not review a question of federal law . . . if the [state court decision] rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman, 501 U.S. at 729. Here, Judge Hudson found that sufficient facts appeared in the trial record such that the ineffective assistance of counsel claim should have been brought on direct appeal. On habeas review, the initial question for this Court is whether Section 440.10(2)(c) has been regularly invoked in similar circumstances. See Garcia, 188 F.3d at 77 (quoting Ford v. Georgia, 498 U.S. 411, 423-24, 111

19

S. Ct. 850, 112 L. Ed. 2d 935 (1991) (noting that, to be "adequate to support the judgment" a procedural default rule must be "firmly established and regularly followed").

Petronio contends that the procedural bar imposed by Judge Hudson was not adequate in this case because Section 440.10(2)(c) is not consistently applied to bar ineffective assistance claims predicated on counsel's failure to object to the legal sufficiency of a depraved indifference murder charge. See People v. Brown, 41 A.D.3d 261, 264 (1st Dep't 2007) (finding the argument that counsel was ineffective for failing to move to dismiss a depraved indifference murder charge could be raised in a Section 440.10 motion rather than on direct appeal because the rationale for counsel's failure was not clear from the record). However, the issue is not whether state courts have invoked Section 440.10(2)(c) in this very narrow factual context. The issue is whether Section 440.10(2)(c) has been regularly invoked where the state court finds that the basis for an ineffective assistance of counsel claim was clear on the face of the record.

Fortunately, the Second Circuit has already answered this question, finding that "[w]here the basis for a claim of ineffective assistance of counsel is well established in the trial record, a state court's reliance on subsection (2)(c) provides an independent and adequate procedural bar to federal habeas review." Murden, 497 F.3d at 196. The Court's task, then, is to determine whether counsel's alleged deficiency—his failure to object to the depraved indifference charge with adequate specificity—was well established in the trial record.

Petronio is correct that a Section 440.10 motion is the appropriate mechanism where an ineffective assistance of counsel claim "involves matters outside the record relating to the reasons for trial counsel's failure to object to certain testimony." People v. Reyes, 11 A.D.3d 293, 782 N.Y.S.2d 457 (1st Dep't 2004). In such cases, an ineffective assistance of counsel claim would appropriately be raised in a Section 440.10 motion because there could be any

number of strategic reasons not evident in the record why counsel might have chosen not to raise an objection. However, this is not a case where counsel completely failed to object to the legal sufficiency of a charge, a scenario that would invite speculation about his strategic reasons for not offering an objection.

Here, Petronio's trial counsel offered, *on the record*, a generalized objection to the sufficiency of the depraved indifference murder charge. (Tr. 1162.) The Court is hard-pressed to imagine—and Petronio does not make a convincing effort to explain—how counsel's failure to offer a more specific objection that would have actually preserved the issue for appeal might have been part of some off-the-record trial strategy. Because the alleged error is clear from the record itself, this is not a case where the Appellate Division would have been unable to test counsel's ineffectiveness.

Under these circumstances, where all of the information Petronio needed to challenge counsel's failure to preserve the legal insufficiency issue was contained in the trial record, Judge Hudson properly found that Petronio's ineffective assistance of counsel claim should have been raised on direct appeal. Therefore, the Court finds that Petronio's ineffective assistance of counsel claim was never properly presented to the state courts. Accordingly, he is unable to show that counsel's alleged ineffectiveness caused his default.

### b. The Novelty of Petronio's Legal Insufficiency Argument

As discussed above, at the time of the Petitioner's trial, the elements of depraved indifference murder were established by the Court of Appeals' decision in Register. 60 N.Y.2d 270. He argues, therefore, that he could not have crafted a motion to dismiss along the lines of his current argument because the underlying legal basis of the argument had yet to be developed in Payne, Suarez and Feingold. Petronio claims that the novelty of the legal insufficiency

argument he now presses, should establish "cause" for his failure to object with adequate specificity.

A petitioner may show cause for a procedural default where an argument he makes on habeas review was so novel that its legal basis was not reasonably available to counsel. <u>Bousley v. United States</u>, 523 U.S. 614, 622, 118 S. Ct. 1604 (1998) (quoting <u>Reed v. Ross</u>, 468 U.S. 1, 16, 104 S. Ct. 2901, 2910, 82 L.Ed.2d 1 (1984). However, the Supreme Court has observed that " '[w]here the basis of a . . . claim is available, and other defense counsel have perceived and litigated that claim, the demands of comity and finality counsel against labeling alleged unawareness of the objection as cause for a procedural default.' " <u>Bousley</u>, 523 U.S. at 623 n.2 (quoting <u>Engle v. Isaac</u>, 456 U.S. 107, 134, 102 S. Ct. 1558, 71 L.Ed.2d 783 (1982)).

The Petitioner points out that, after <u>Suarez</u>, a defendant can be convicted of depraved difference murder "when but a single person is endangered in only a few rare circumstances." 6 N.Y.3d at 212. Petronio's fundamental argument is that his case does not present one of these rare circumstances. According to Petronio, his counsel's failure to preserve the legal sufficiency challenge should be excused because this argument could not reasonably have been within counsel's contemplation at the time of his trial in April of 2002. The Court agrees.

Section 125.25(2) underwent a drastic change in the years after Petronio was convicted and there is no indication that the argument he now advances was perceived or litigated three years before <u>Suarez</u> was decided. Therefore, the Court finds that Petronio has established cause for the procedural default. <u>See</u> <u>Fernandez</u>, 558 F. Supp. 2d at 494 (finding that the "evolving state" of Section 125.25(2) excused counsel's alleged failure to preserve a legal sufficiency argument).

The Court also has no difficulty in finding that Petronio has established prejudice resulting from the default. As the Court noted in <u>Fernandez</u>, the difference between a conviction for depraved indifference murder and one for manslaughter is significant, with the former carrying a potential prison term of twenty five years to life while the latter carries a term of five to fifteen years imprisonment. <u>Id.</u> at 494. Under the circumstances, there is no question that the procedural default would result in an injury of "constitutional dimensions". <u>Carrier</u>, 477 U.S. at 494.

Even if Petronio's legal sufficiency argument is procedurally barred, the Court finds that a miscarriage of justice would result if his claim was not reached on the merits.

### 3. Miscarriage of Justice

Petronio claims that it would be a miscarriage of justice for the Court not to reach the merits of his legal sufficiency argument. The Court agrees.

As noted above, a federal court may review a state court ruling that rested on "independent" and otherwise "adequate" grounds if the Petitioner can show that failure to consider the claim would result in a "fundamental miscarriage of justice." <u>Coleman</u>, 501 U.S. at 749-50. Under this exception, a petitioner may evade a procedural bar if he can show that "he is actually innocent of the crime for which he has been convicted." <u>Dunham v. Travis</u>, 313 F.3d 724, 730 (2d Cir. 2002) (citing <u>Schlup v. Delo</u>, 513 U.S. 298, 321, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995), and <u>Carrier</u>, 477 U.S. at 496). In this context, " 'actual innocence' means factual innocence, not mere legal insufficiency." <u>Bousley</u>, 523 U.S. at 623. "To establish actual innocence, [a] petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.' " <u>Id.</u> (citing <u>Schlup</u>, 513 U.S. at 327-28).

In pressing the argument that a miscarriage of justice will result if the Court declines to review the merits of his legal insufficiency claim, Petronio relies heavily on Fernandez. 558 F. Supp. 2d 480. In Fernandez, the petitioner chased after the victim in a car, got out, and beat the victim four to five times over the head with a flashlight, causing fatal injuries. Id. at 482. Fernandez was acquitted of intentional murder, but convicted of depraved indifference murder. Id. at 483. On habeas review, he claimed that that the evidence introduced at trial was legally insufficient to support the depraved indifference murder conviction in light of Feingold. Id. The Honorable Denny Chin, then a United States District Judge, agreed. Id.

Judge Chin held that, even if the argument was procedurally defaulted, a fundamental miscarriage of justice would result if the merits were not reached. Id. at 494. As **he** explained:

> Fernandez has made a colorable showing here that he is actually innocent of depraved indifference murder. While the evidence surely proved that he was guilty of manslaughter, as discussed below, his actions-even as described by the People at trial-simply did not constitute depraved indifference murder as a matter of law, and it would be manifestly unjust for him to serve a sentence for a crime that he did not commit. Id.

The Court finds Judge Chin's analysis persuasive and applicable to the instant case. As discussed in greater detail below, the Court finds that, viewing the evidence in the light most favorable to the People, no reasonable juror could have convicted Petronio of depraved indifference murder under the Payne, Suarez, Feingold formulation of Section 125.25(2). In this sense, Petronio is factually innocent of the charge for which he was convicted and it would therefore be a miscarriage of justice to sidestep the merits of his claim on habeas review.

Contrary to the Respondent's argument, a petitioner need not offer new evidence in order to invoke the miscarriage of justice exception. In Bousley, the petitioner pleaded guilty to drug possession with intent to distribute, 21 U.S.C. § 841(a)(1), and to "using" a firearm "during and

in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)." 523 U.S. at 616.

Petitioner sought habeas relief from the firearm conviction, arguing that neither the "evidence" nor the "plea allocution" showed a "connection between the firearms in the bedroom of the house, and the garage, where the drug trafficking occurred." Id. at 617. The District Court dismissed his petition and while his appeal was pending, the Supreme Court held in Bailey v. United States, 516 U.S. 137, 144, 116 S. Ct. 501, 506, 133 L.Ed.2d 472 (1995), that § 924(c)(1)'s "use" prong requires the Government to show "active employment of the firearm," such that a defendant could not be convicted under the statute for merely storing a gun near drugs or drug proceeds. Bailey, 516 U.S. at 144.

After the Court of Appeals affirmed the dismissal of the petition, the Supreme Court granted certiorari to address whether Bailey should be applied retroactively to Bousley's case. Bousley, 523 U.S. at 617-18. The Court held that although the petitioner's claim was procedurally defaulted, a remand was necessary to determine whether he could make a showing of actual innocence that would entitle him to a hearing on the merits. Id. at 623. Bousley, therefore, reflects that petitioners may show actual innocence not only through the introduction of new evidence but by highlighting intervening changes in the law. See id. at 623-24.

The Respondent also claims that to allow Petronio to invoke the miscarriage of justice exception here would set a precedent that would permit any petitioner asserting a legal insufficiency argument to overcome the procedural bar. However, the Court is skeptical of this prediction given the unique nature of the Petitioner's argument. In this case, the Petitioner does not simply claim that the evidence bearing on one of the elements of the charge was insufficient. His argument is that, under the controlling interpretation of Section 125.25(2), he could not possibly have been convicted of depraved indifference murder. In the Court's view, the

miscarriage of justice exception was designed, at least in part, for petitioners who can show this rare type of factual innocence.

The Court is mindful that "the fundamental miscarriage of justice exception is 'extremely rare' and should be applied only in 'the extraordinary cases.'" <u>Sweet</u>, 353 F.3d at 142 (quoting <u>Schlup</u>, 513 U.S. at 321-22). The Court also recognizes that Petronio is not the most sympathetic petitioner. However, his case is extraordinary in the sense that, after his trial, the crime for which he was convicted underwent a substantial doctrinal change. In the Court's view, he is entitled to avail himself of those changes, and it would be unjust not to reach the merits of his claim.

### 4. Finally, The Merits

The Petitioner argues that under the new interpretation of Section 125.25(2) set forth in <u>Payne</u>, <u>Suarez</u>, and <u>Feingold</u>, the evidence presented at trial was legally insufficient to convict him of depraved indifference murder.

A petitioner asserting a legal insufficiency claim "is entitled to habeas corpus relief [only] if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 324, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In undertaking this analysis, the Court must view the evidence in the light most favorable to the prosecution and draw all permissible inferences in its favor. <u>Fama</u>, 235 F.3d at 811. Even under this deferential standard, in view of the prevailing interpretation of Section 125.25(2), Petronio's conviction cannot stand.

In <u>Suarez</u>, a case the New York Court of Appeals decided well before Petronio's conviction became final, the defendant stabbed his girlfriend three times and fled their apartment

leaving her to bleed to death.  Suarez, 6 N.Y.3d at 205.  In a companion case decided in the same decision, a separate defendant stabbed her boyfriend during an argument, called 911, and then left the apartment before the ambulance arrived.  Id. at 206.  The boyfriend died of the stab wound at the hospital.  Id.  Both defendants were convicted of depraved indifference murder.  Id. at 205-06.  In reversing their convictions, the Court of Appeals drastically narrowed the scope of the depraved indifference murder statute.

After Suarez, "indifference" is now best understood as a dispassion towards the fate of the victim -- "a willingness to act not because one intends harm, but because one simply doesn't care whether grievous harm results or not."  6 N.Y.3d at 214.  Critically, the Court of Appeals explained that, under the proper construction of Section 125.25(2) "[a] defendant may be convicted of depraved indifference murder when but a single person is endangered in only *a few rare circumstances*."  Id. at 212 (emphasis added).  These "rare circumstances" are strictly limited to cases where a defendant "intends neither to seriously injure, nor to kill, but nevertheless abandons a helpless and vulnerable victim in circumstances where the victim is highly likely to die," or those fact patterns where the defendant, "acting with a conscious objective not to kill but to harm--engages in torture or a brutal, prolonged and ultimately fatal course of conduct against a particularly vulnerable victim."  Id.  The evidence adduced at trial reflects that Petronio's case does not fall into either of these categories.

With good reason, the Respondent does not contend that this is the type of abandonment case that could support a depraved indifference murder conviction.  The archetypal abandonment cases, Kibbe and Mills, present a quite different set of facts.  In Kibbe, three defendants robbed an intoxicated man, took most of his clothing, and left him on the side of a dark highway in frigid temperatures where he was later accidentally struck and killed by a motorist.  35 N.Y.2d at

410-11. On this record, the Court of Appeals affirmed their convictions for depraved indifference murder. Id. at 413. In Mills, the defendant pushed a twelve year old boy into a lake, saw the victim strike his head on the pier, and yet did nothing to save the victim as he drowned. 1 N.Y.3d at 275. The Court of Appeals found the evidence sufficient to convict Mills of depraved indifference murder. See id. at 275-77.

Here, the testimony from Petronio and Dr. Catanese reflects that, at the very least, Petronio *intended* to seriously injure Walter during their fight, taking this fact pattern outside the realm of the abandonment cases. Dr. Catanese's testimony also shows that Walter died instantly from his injuries and not because Petronio failed to summon help. (Tr. 1108.)

The Respondent argues that, although the scope of Section 125.25(2) was significantly narrowed after Petronio's trial, a reasonable jury could still have convicted him of depraved indifference murder in this case because his crime was carried out with extreme brutality against a vulnerable victim. In pressing this argument, the Respondent implies that Walter was a vulnerable victim because he had been sprayed with pepper spray and was on the ground when the fatal blows were delivered.

In the Court's view, Walter was not the type of vulnerable victim contemplated by the New York Court of Appeals, as the cases that fit into this category all involve the severe mistreatment of infants or young children. See People v. Bryce, 88 N.Y.2d 124, 126, 643 N.Y.S.2d 516 (1996) (affirming depraved indifference murder conviction for defendant who inflicted serious injuries on his seven-week-old son); Best, 85 N.Y.2d at 827 (affirming depraved indifference murder conviction of defendant who repeatedly beat her nine-year-old son and failed to obtain proper medical treatment); Poplis, 30 N.Y.2d at 87 (affirming depraved

indifference murder conviction of defendant who beat a three-and-a-half year old child over the course of five days, causing the child's death).

However, even assuming that Walter could qualify as a vulnerable victim, he was not tortured or subjected to a prolonged course of abuse. Rather, Walter died from injuries sustained during a one-on-one struggle that could not have taken more than a few minutes. Cases decided after <u>Suarez</u> reflect that the instant fact-pattern clearly falls outside the reach of this exception.

In <u>People v. Harris</u>, the defendant and the victim were involved in an altercation outside a bar. 13 Misc.3d 901, 821 N.Y.S.2d 844 (Sup. Ct. Queens Cnty. 2006). The defendant left the scene after striking the victim in the jaw only to return with what he described as a pipe but what eyewitnesses said was a knife. <u>Id.</u> at 903. The defendant ran over to where the victim was laying, hit him twice with the object, and then stomped on the victim's head and neck. <u>Id.</u> The Court found the evidence legally insufficient to convict the defendant of depraved indifference murder. <u>See</u> <u>id.</u> at 904-06.

In <u>People v. Pomie</u>, the defendant left the scene of an assault after repeatedly kicking, stomping, and punching the victim for two to fifteen minutes. 55 A.D.3d 630, 631, 865 N.Y.S.2d 134 (2d Dep't 2008). When he returned five minutes later, he continued to stomp, kick, and punch the victim for another five to twenty-five minutes. <u>Id.</u> The defendant even returned a third time to forcefully kick the victim, who was by then unconscious. <u>Id.</u> Nevertheless, the Second Department found that the evidence was legally insufficient to convict the defendant of assault in the first degree based on depraved indifference to human life. <u>Id.</u> at 632. Surely if Pomie's conduct was not considered a prolonged course of abuse, then it strains reason to find that Petronio's behavior would fit into this exception.

Although the Register standard was still in place at the time of his trial, Petronio was entitled to benefit, on direct appeal, from changes in the law that occurred before his conviction became final.  Under Suarez, the evidence offered at Petronio's trial was legally insufficient to convict him of depraved indifference murder.  6 N.Y.3d 202.  It is well-established that a defendant's due process rights are violated when he is convicted absent proof beyond a reasonable doubt.  See Jackson, 443 U.S. at 307 (holding that a petitioner is entitled to habeas relief if no rational trier of fact could have found proof of guilt beyond a reasonable doubt).  The state courts' affirmance of his conviction was therefore contrary to clearly established federal law.

In view of the Court's ruling on the Petitioner's legal sufficiency argument, it is unnecessary to review his remaining claims.

### III.  CONCLUSION

For the foregoing reasons, Petronio's petition for a writ of habeas corpus is granted.  His conviction for depraved indifference murder is vacated, and the case is remanded to the state courts for further proceedings consistent with this opinion.

**SO ORDERED.**

Dated: Central Islip, New York

     September 14, 2010

                   */s/ Arthur D. Spatt*

                   ARTHUR D. SPATT

                   United States District Judge